The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHRYN CHENDERLIN, *et al.*,

Plaintiffs,

v.

WALMART INC,

Defendant.

NO. 26-cv-2936-BJR

**ORDER REMANDING CASE FOR LACK OF STANDING**

## I. INTRODUCTION

This matter comes before the Court on consideration of the parties' responses to the Court's Order to Show Cause. The Court issued the Order to Show Cause *sua sponte* to determine whether the Court has subject matter jurisdiction over this action. ECF No. 14. Having reviewed the materials,[1] the record of the case, and the relevant legal authorities, the Court will remand this case to King County Superior Court. The reasoning for the Court's decision follows.

[1] Including the Notice of Removal, ECF No. 1; Complaint, ECF No. 1, Ex. 17; Walmart's Response, ECF No. 15; and Chenderlin's Response, ECF No. 17; Walmart's Reply, ECF No. 18.

## II. BACKGROUND

Plaintiffs Kathryn Chenderlin and Brandia Taamu (hereinafter "Plaintiffs" or "Chenderlin"), originally filed this putative class action on June 10, 2026, in King County Superior Court alleging that Defendant Walmart Inc. ("Walmart") had sent them and other Washington consumers marketing emails with false or deceptive subject lines, in violation of Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA"). *See* Notice of Removal, ECF No. 1. Specifically, Plaintiffs allege that Walmart spammed them with emails containing subject lines that created a false sense of urgency regarding the duration or availability of promotional offers. Compl. ¶¶ 6, 18, 20, 24, 40, 91, 95, ECF No. 1, Ex. 17. Plaintiffs highlight examples of successive emails that Walmart sent consumers in 2025. *Id.* ¶¶ 40–41. Plaintiffs' CPA claims are premised on their CEMA cause of action. *Id.* ¶¶ 99–107. Plaintiffs seek statutory damages, injunctive relief, and related remedies. *Id.* ¶¶ 7, 104, 107. Walmart removed the case to this Court on August 17, 2026, asserting jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 1453. Notice of Removal at 3–6. On September 18, 2026, this Court ordered the parties to show cause why this action should not be remanded for lack of subject matter jurisdiction due to lack of Article III injury.[2]

## III. LEGAL STANDARD

Removal requirements should be strictly construed. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). A removing party bears the burden of establishing federal jurisdiction and must overcome a "strong presumption" against removal. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006); *Gaus*, 980 F.2d at 566. Federal jurisdiction "must be rejected if

[2] Walmart filed a Motion to Compel Arbitration. ECF No. 13. In its Order to Show Cause, the Court struck that Motion with leave to refile.

there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566; *but see Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("[N]o antiremoval presumption attends cases invoking CAFA."). "[T]he court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus*, 980 F.3d at 566). If at any time before final judgment it appears that the federal district court lacks subject matter jurisdiction, "the case shall be remanded" to state court. 28 U.S.C. § 1447(c); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

## IV. DISCUSSION

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). In the context of a class action, the class representatives must have standing. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974))); s*ee also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue."). Whether a plaintiff has Article III standing to proceed with this lawsuit implicates the Court's subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating that standing is jurisdictional).

**A. Chenderlin's Complaint Fails to Allege That She Suffered a Concrete Harm.**

Plaintiffs' claims arise under state law and rely on CEMA's prohibition against transmitting commercial emails containing "false or misleading information in the subject line." RCW 19.190.020(1)(b); *see also* Compl. ¶¶ 4, 18, 94. The Washington Supreme Court has held that, for purposes of state law, the receipt of a false or misleading email may constitute an injury sufficient to support statutory damages. *See Brown v. Old Navy, LLC*, 4 Wn.3d 580 (2025) (holding that CEMA does not require proof of actual damages because "the injury is receiving an e-mail that violates its regulations"). And a violation of CEMA results in a *per se* violation of the CPA. *Id.* at 584. However, to establish Article III standing to bring a claim in federal court, a statutory violation alone does not suffice. After all, "an injury in law is not an injury in fact." *TransUnion v. Ramirez*, 594 U.S. 413, 427 (2021). And "to establish standing, a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

At issue in this case is the "[f]irst and foremost" of standing's three requirements—"a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citations omitted). To establish an injury in fact, plaintiffs must show that they suffered "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560 (citations omitted). Importantly, "Article III standing requires a concrete injury *even in the context of a statutory violation*." *Spokeo, Inc. v. Robins (Spokeo I)*, 578 U.S. 330, 341 (2016) *as revised* (May 24, 2016) (citations omitted) (emphasis added). A plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* "[T]he Supreme Court made clear that a plaintiff does not

'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' " *Robins v. Spokeo, Inc. (Spokeo II)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo I*, 578 U.S. at 341). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused [her] to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.' " *Id.* (quoting *Spokeo I*, 578 U.S. at 340).

Chenderlin does not take a position on whether her pleadings sufficiently alleged a concrete harm sufficient to meet the standing requirements of federal jurisdiction. Chenderlin's Response at 3–4. On the other hand, Walmart argues that the Court has subject matter jurisdiction and asks to be permitted to refile its stricken motion to compel arbitration. Walmart's Response at 3, 14. Walmart argues that because the Washington State Legislature's determined that the mere receipt of an email with a false or misleading email subject line is a statutory violation of CEMA, Chenderlin's allegations that she received such emails from Walmart suffice to state an injury for standing purposes. *Id.* at 6–7; *see also* Compl. ¶¶ 6, 18, 20, 24, 40, 91, 95. But the legislature's creation of a statutory injury does not automatically satisfy the concreteness requirement for establishing Article III standing. *See TransUnion*, 594 U.S. at 426–27.

Walmart further argues that these emails resulted in intangible injuries that "can nevertheless be concrete." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 679 (9th Cir. 2021) (quoting *Spokeo I*, 578 U.S. at 340). Indeed, "an *intangible* injury may be concrete if it presents a material risk of *tangible* harm or 'has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts,' like common law torts or certain constitutional violations." *Phillips v. United States Customs & Border Prot.*, 74 F.4th 986, 991 (9th Cir. 2023) (quoting *Spokeo I*, 578 U.S. at 340–41); *see also Popa v. Microsoft Corp.*,

153 F.4th 784, 791 (9th Cir. 2025) ("*TransUnion* requires a court to assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system.").

While the Complaint describes harms to Washington consumers generally, it fails to allege that Plaintiffs suffered an injury that is sufficiently concrete. Neither party contests that Chenderlin's complaint is devoid of allegations of tangible injury as a result of receiving marketing emails containing false or misleading subject lines. Rather, Walmart insists that receiving these emails resulted in harms for Plaintiffs that are analogous to harms that have "traditionally been actionable in our nation's legal system," *Popa v. Microsoft Corp.*, 153 F.4th at 791, such as nuisance, intrusion upon seclusion, and invasion of privacy. Walmart's Response at 4–7. The Court is unpersuaded.

In support of its proposition, Walmart relies on *Harbers v. Eddie Bauer, LLC*, which held that "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." 415 F. Supp. 999, 1008 (W.D. Wash. 2019). But that case predates the Supreme Court's instructive 2021 decision, *TransUnion*, 594 U.S. 413, and the Ninth's Circuit ruling in *Popa v. Microsoft Corp.*, 153 F.4th 784. Furthermore, courts in this district have found that similar allegations do not bear a close relationship to nuisance, as "injuries sounding in nuisance require real and appreciable interference, … and must be unsolicited[.]" *Nuri v. True Religion Apparel*, No. 2:25-cv-690-LK, 2026 WL 864886, at *3 (W.D. Wash. Mar. 30, 2026) (citing Restatement 2d of Torts, §§ 821F(c), 892A(1)) (cleaned up). And courts have not found an injury similar to intrusion upon seclusion where plaintiffs ostensibly consented to receiving marketing emails from the defendant. *See Aronson v. 5 Star Apparel LLC*, No. 2:25-cv-2691-JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) (citing *Montes v. Catalyst Brands LLC* ("*Montes I*"), No. 2:25-cv-0281-TOR, 2025 WL 3485827, *2–3 (E.D. Wash. Dec. 4, 2025)); *cf.*

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding the intangible injury of receiving telemarketing phone calls or text messages, in violation of the Telephone Consumer Protection Act, to be concrete because plaintiffs did not consent to their receipt).

Walmart's reliance on *Havens Realty Corp. v. Coleman* is also unavailing. 455 U.S. 363, 373 (1982). *Haven Realty* analyzed tester standing to bring a case under the Fair Housing Act. There, the denial of truthful information about the available housing for racially discriminatory reasons resulted in the concrete harm of deprivation from "the benefits of interracial association arising from living in an integrated community free of housing discrimination." *Id.* at 369. The injury described by the *Havens Realty* court is substantially more concrete than the one described in the instant case.

Here, Chenderlin's allegations indicate that Plaintiffs consented to receiving marketing emails from Walmart. Compl. ¶ 58; *cf. Brinton v. Vivint Inc.*, No. 3:23-cv-6105-TMC, 2024 WL 3688589, at *1–3. (W.D. Wash. Aug. 7, 2024) (finding spam emails to constitute a concrete intangible injury that is analogous to common law torts where they obscured the sender and led plaintiff to websites selling defendant's products). Walmart argues that "Plaintiffs' injury is not that they received unsolicited advertisement emails but rather that the advertisement emails they received were allegedly deceptive—and Plaintiffs do not allege that they consented to deception." Walmart's Response at 2, 6**.** However, that contention does not correlate with the traditionally actionable harms of nuisance, intrusion upon seclusion, and invasion of privacy. *See Taylor v. Lenovo*, No. 3:25-CV-5840-JNW, 2026 WL 3025772, at *3 (W.D. Wash. Oct. 8, 2026) ("[N]uisance and intrusion guard against unwanted contact, not inaccuracies in a wanted contact.).

Accordingly, the complaint does not adequately state a concrete intangible harm and without such harm, Plaintiffs lack standing to bring a federal case.

Many courts in this district, including this Court, have remanded to state court similar cases involving CEMA and CPA claims based on false or misleading email subject lines, finding that the complaints insufficiently alleged a concrete Article III injury. *See, e.g.*, *Samaduroff v. David Peyser Sportswear Inc*, No. 3:26-CV-5275-TMC, 2026 WL 2675977 (W.D. Wash. Sept. 11, 2026); *Aronson v. 5 Star Apparel LLC*, 2026 WL 2332885*; Hutton v. Papa John's, Inc.*, No. 2:25-cv-1922-KKE, 2026 WL 2210133 (W.D. Wash. July 31, 2026); *Nuri v. True Religion Apparel*, 2026 WL 864886. This Court concludes that the violation of the statutory provision at issue here—marketing emails transmitted with misleading subject lines about the duration of promotional offers—is a technical or procedural violation that by itself does not manifest concrete injury beyond statutory damages. *See Atkinson v. Penney OpCo LLC*, No. 23-cv-1806-BJR, 2024 WL 3579910, at *2 (W.D. Wash. July 30, 2024). As such, Plaintiffs lack standing.

When a plaintiff lacks Article III standing, the district court lacks subject matter jurisdiction and must remand the case. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("The rule that a removed case in which the plaintiff lacks Article III standing must be remanded to state court under § 1447(c) applies as well to a case removed pursuant to CAFA as to any other type of removed case."). Here, Walmart, as the "party invoking federal jurisdiction," has not met its burden of demonstrating a case or controversy under Article III standing at this stage of litigation. Because Plaintiffs' lack of Article III standing implicates the Court's subject matter jurisdiction, *see Warth*, 422 U.S. at 498, this case will be remanded to King County Superior Court pursuant to 28 U.S.C. § 1447(c).

**B. Walmart's Request for a Stay is Denied.**

Walmart argues in the alternative for a stay of this case pending the Ninth Circuit's resolution of *Montes v. Penney Opco, LLC* ("*Montes II*"), No. 26-241 (9th Cir. 2026), an appeal of an Eastern District of Washington order that dismissed a similar CEMA case. Walmart's Response at 4–6; *see also Montes v. Catalyst Brands LLC*, No. 2:25-cv-0281-TOR, 2025 WL 3485827 (E.D. Wash. Dec. 4, 2025) (holding that plaintiff in CEMA and CPA case lacked Article III standing because she failed to allege a concrete harm). Walmart's Response at 11–14. Plaintiffs oppose the stay request. Chenderlin's Response at 4–5.

This Court concludes that a stay pending the Ninth Circuit's ruling in *Montes II* is unwarranted. The Court sees no reason to further delay this case's resolution, as state courts need not wrestle with Article III standing. In the event that the Ninth Circuit concludes that these types of allegations suffice to state a concrete injury, Defendants will be permitted to file a second notice of removal. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 789 (9th Cir. 2018) (quoting *Reyes v. Dollar Tree Stores, Inc.*, 781 F. 3d 1185, 1188 (9th Cir. 2015)) ("An intervening change in the law that 'gives rise to a new basis for subject-matter jurisdiction' qualifies as a subsequent event that justifies a successive removal petition.") In the meantime, remanding this case is consistent with securing the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## V. CONCLUSION

For the foregoing reasons:

1. This case is remanded to King County Superior Court.

DATED this 16th of October 2026.

Barbara Jacobs Rothstein
United States District Judge